Commonwealth *v.* Tracy & others.

## COMMONWEALTH *vs.* HENRY G. TRACY & others

The provision of the Rev. Sts. c. 142, § 8, for the apprehension of persons charged with the commission of offences in other States, is not repugnant to the constitution or laws of the United States.

An averment, in an indictment for a riotous assault upon an officer in the lawful discharge of the duties of his office, that he was in the service of a legal precept, and had A. in his custody as a prisoner, to be examined on a charge of larceny, is supported by proof that the officer was in the service of a legal precept, and had A. in his custody as a prisoner, to be examined on a charge of larceny in another State, and of being a fugitive from justice.

An officer who has a legal warrant to arrest A., who is charged with larceny in another State, and with being a fugitive from justice, does not abuse the process, nor forfeit his protection under such warrant, by holding at the same time a power of attorney from one who claims the custody of A. as a fugitive slave, and is proceeding to carry him before the proper tribunal, to obtain a certificate according to the law of the United States.

On the trial of an indictment for a riotous assault upon an officer while serving a legal precept on A., who was charged with larceny in another State, and with being a fugitive from justice, the defendants cannot introduce evidence that B., who claimed the custody of A. as a fugitive slave, had declared, and that the officer knew B. had declared, that A. had not committed larceny, and that the charge was made merely for the purpose of getting A. into custody, so that he might the more easily be carried home.

HENRY G. TRACY, Francis Saunders, William Williams, Hamilton H. Smith and Robert Wood, were tried in the municipal court, at the November term, 1842, on an indictment which alleged that they, " together with divers others, to the number of 50 evil disposed persons," whose names were not known to the grand jury, " on the 20th of October 1842, in the night-time, at Boston, with force and arms, did unlawfully, riotously and routously assemble together to disturb the peace, and being so assembled, in and upon one Jonas Stratton, then and there one of the constables of the city of Boston, in the due and lawful discharge of the duties of his office of constable of said city, being in the service of a legal precept to him directed, and then and there having lawfully one George Latimer, otherwise called Albert Mason, in his custody as a prisoner, to be examined, on a charge of larceny, by the police court of said city, according to a certain lawful precept to him directed, and issued by said police court, under its seal, upon a com-

plaint made and sworn to, according to law, said police court then and there having lawful jurisdiction in the premises, and said Stratton then and there being in the peace of the Com- monwealth, an assault did make, unlawfully, riotously and rout- ously, and him the said Stratton did then and there unlawfully, &c. beat, wound and evil treat, and resist, hinder and obstruct him in the discharge of the duties of his office of constable, and unlawfully, riotously, &c. did attempt to rescue said Latimer from the custody of said Stratton, and set him free and at large from the custody of said Stratton, and did then and there un- lawfully, riotously, &c. throw a dangerous missile, called a brick- bat, at and towards said Stratton, which missile hit and danger- ously wounded one Adam Grant, then and there one of the watchmen of said city of Boston, who then and there was act- ing as an assistant of said Stratton, constable as aforesaid ; and other wrongs and injuries, unlawfully, riotously and routously did and committed," &c.

At the trial, the time of the committing of the acts alleged in the indictment was proved to have been about 11 o'clock on the night of the 20th of October 1842, and immediately after a hearing and other proceedings had before the chief justice of the supreme judicial court, assisted by the other justices of said court, by *habeas corpus*, in the case of said Latimer, and while said Stratton was conducting said Latimer to jail. (See a state- ment of the proceedings on the writ of *habeas corpus*, as they were proved on the trial, in the opinion of the court, *post.* p. 545.)

It was proved, at the trial, that on the 19th of October 1842, a complaint, on the charge of larceny in the city of Boston, was made by E. G. Austin, Esq., in the police court of said city, against the said Latimer ; that a warrant was issued thereon, ac- cording to law, and delivered to said Stratton, a constable of said city, who, by virtue thereof, on the same day arrested said Latimer and committed him to jail. It was further proved, that on said 20th of October, about 3 o'clock, P. M., in said police court, the aforesaid complaint was dismissed, and all proceed- ings thereon ended by said court. It was then proved, that on

said 20th of October, at about 11 o'clock, A. M., another complaint, on the charge of larceny in Norfolk, in the State of Virginia, and being a fugitive from justice from said State, was made by said Austin, against said Latimer, in said police court ; that a warrant was issued thereon and delivered to said Stratton, constable as aforesaid, who, before noon on the same day, by virtue thereof, arrested said Latimer, and committed him to jail. It was also proved, that a written authority from James B. Gray, who claimed said Latimer as his fugitive slave, was delivered to said Stratton, to hold and keep said Latimer as such fugitive slave, at the same time when each of the aforesaid warrants was delivered to him. It did not appear that said Latimer had been charged, before any competent tribunal in Virginia, with the alleged crime of larceny there, nor that he had been demanded by the executive of said State, as a fugitive from justice, before the making of the complaint and the issuing of the warrant aforesaid, on the 20th of October.

The defendants objected to the admission in evidence of the complaint and warrant last mentioned, but the objection was overruled, and the same were proved to the jury.

The defendants offered a witness to testify to declarations, made by said James B. Gray, that Latimer had never committed any larceny, and that he was arrested on that charge, merely to get him into custody, so that he might be more easily carried home ; and also to prove that said Stratton had knowledge of this fact. The court refused to receive this testimony.

The defendants' counsel requested the court to instruct the jury, 1st, that the complaint and warrant of the 20th of October, by virtue of which said Stratton held said Latimer as a prisoner to be examined on a charge of larceny in the State of Virginia, and being a fugitive from justice from said State, did not support the indictment, but were a material variance from the allegations therein ; and 2d, that said warrant, issued upon the complaint to the police court, was illegal and void ; the said court naving no jurisdiction in the premises. But the court instructed the jury, that said complaint and warrant did not vary from the allegations in the indictment, in a material point, but substantia-

ly supported the same ; that said warrant was not illegal and void, as the police court had full authority and jurisdiction in the premises under Rev. Sts. *c.* 142, § 8, which section does not conflict with the laws of the United States ; that said Stratton. holding said Latimer, as agent of said Gray, as aforesaid, was not incompatible with his holding him as a prisoner under said warrant ; that the written authority aforesaid, given to Stratton by Gray, did not vitiate or take away from Stratton the protection of said warrant, as the warrant was an authority paramount thereto ; and that after the said order of the chief justice of the supreme judicial court, remanding Latimer to the custody of said Stratton, as agent of said Gray, said Stratton held Latimer, as well by virtue of said warrant, as constable, as by said written authority, as agent of said Gray.

The jury found that said Tracy, Saunders and Smith were guilty, and strongly recommended them to the mercy of the court ; but that said Williams and Wood were not guilty.

The defendants, who were found guilty, alleged exceptions to the foregoing rulings and instructions of the court.

*Ellis*, for the defendants. The warrant given in evidence does not support the indictment. The indictment alleges a warrant issued on a complaint for larceny ; but the warrant given in evidence, was issued on a complaint for larceny in another State, and also on the charge of fleeing from justice.

A charge must be proved as laid. The criminal acts alleged, and those proved, must be identical. Mere surplusage may vitiate an indictment ; for matters of mere description, which might be stricken out, may, by being too broad or too narrow, vitiate the indictment, by failing to identify the offence The omission of a material description has the same effect. The question is not, whether more or less is proved than is charged, but whether it is the same. And whatever is descriptive of that which is material, or describes or limits what is essential to the charge — whether place, time, title, character, office, the record or precept of a court or officer, or any thing else, which identifies it with the acts given in evidence — must be strictly proved. For the same reason, no acts can be given

in evidence, if any of these characteristics show them not to be the same, or if the indictment omits those descriptive particulars, so as to render it uncertain whether they are those with which the prisoner is charged. 2 Rol. Ab. 719. Bul. N. P. 5. *Harris* v. *Rayner*, 8 Pick. 541. *Rex* v. *Taylor*, 1 Campb. 404. *The State* v. *Martin*, 3 Murph. 533. *Weall* v. *King*, 12 East, 452. *Amey* v. *Long*, 1 Campb. 14. *U. States* v. *Lakeman*, 2 Mason, 229. *Dillingham* v. *U. States*, 2 Wash. C. C. 422. *U. States* v. *M'Neal*, 1 Gallis. 387. *Whitaker* v. *Smith*, 4 Pick. 85. *Regina* v. *Cranage*, 1 Salk. 385. 2 Hawk. *c.* 46, § 181. Greenl. on Ev. § 63.

In the present case, the description of the warrant was material to the trial, and ought to have been accurate. Two warrants were in force, at different times. It also affected the jurisdiction of the court that issued the warrant, and the right of those acting under it ; and any discrepancy between the allegations and the proof, in matters material to the jurisdiction, is fatal. 3 Stark. Ev. 1529, 1543. Greenl. on Ev. § 65.

But if the warrant proved was the same which was described in the indictment, yet it was unlawful ; because Latimer had never been *charged*, as required by the Rev. Sts. *c.* 142, § 8 ; because it does not appear that he was liable to be given up, under the laws of the United States ; because the complaint does not set forth such other circumstances, besides the offence, as were necessary to bring the case within the provisions of the law ; and because the 8th section of *c.* 142 of the Rev. Sts. is unconstitutional.*

If the surrender of fugitives from justice were a subject of which the federal and state jurisdiction might be concurrent, in

---

* That section is in these words : "Whenever any person shall be found within this State, charged with any offence committed in any other State or Territory, and liable, by the constitution and laws of the United States, to be delivered over upon the demand of the executive of such other State or Territory, any court or magistrate, authorized to issue warrants in criminal cases, may, upon complaint under oath, setting forth the offence, and such other matters as are necessary to bring the case within the provisions of law, issue a warrant to bring the person so charged before the same or some other court or magistrate, within the State, to answer to such complaint, as in other cases "

the absence of express law, yet as soon as any laws on the sub-
ject are made by congress, the jurisdiction of the State is at
an end.   1 Kent Com. (3d ed.) 388.   3 Story on Constitution
of U. States, § 1748.   This is the principle established in *Hous-
ton* v. *Moore*, 5 Wheat. 1, and in *Prigg* v. *Commonwealth of
Pennsylvania*, 16 Pet. 539.   This last case related to fugitive
slaves ; but the court remarked, that the legislation of the United
States, over the subject of fugitive slaves and fugitives from jus-
tice, must supersede state legislation upon the same subject.   If
that case does not in fact decide the present, the same reasons
apply to it, with equal or greater force.   The nature of the sub
ject peculiarly demands uniformity of action and unity of will.

It was only on the adoption of the constitution of the United
States that the surrender of fugitives from justice became a duty
of the States.   Before, it was a matter of mere national comity,
never obligatory, and often refused.   Story's Conflict of Laws,
§ 628.   Congress created the rule, and therefore should have
supreme and sole control over the limits and mode of its en-
forcement.

If the police court had no jurisdiction, the warrant was ille
gal, and could be no justification of the officer.   22 Vin. Ab.
Void or Voidable, A. 17.   *Cable* v. *Cooper*, 15 Johns. 157.
*Butler* v. *Potter*, 17 Johns. 145.   *Pearce* v. *Atwood*, 13 Mass.
324.   *Sanford* v. *Nichols*, 13 Mass. 286.   *Brown* v. *Comp-
ton*, 8 T. R. 424.   *Parton* v. *Williams*, 3 Barn. & Ald. 330.

The officer forfeited the protection of the warrant, if he acted
as the agent of Gray.   There is no obligation, besides that
which is imposed by the constitution and laws of the United
States, to aid in the support of slavery.   The law of Massa-
chusetts regards slavery as *malum in se*, and therefore will not
extend that obligation beyond the strict limits set by the terms
of the federal government.   Our state officers, therefore, can-
not be required or permitted to lend their aid to support it ; for
it is a perversion of justice to suffer one to do acts plainly be-
yond the sphere of his official duty, under color of office.   See
Termes de la Ley, Color of Office.   *White* v. *Taylor*, 4 Esp.
R. 80.   *Samuel* v. *Payne*, 1 Doug. 359.   *McCloughan* v

*Clayton,* Holt N. P. 478.   It would be a fraud on the law to suffer one to claim the protection of a precept which he aided in procuring under a feigned charge, for iniquitous and unlawful purposes.

The duties of officer and agent were incompatible and conflicting in the present case.   As officer, it was Stratton's duty to apprehend, detain and commit Latimer, to answer charges. As agent, he was to seize and carry him away.   But if he could act in this double capacity, he might seize and carry out of the State, with impunity, any person whatever.   The temptation thus held out to the abuse of office should settle the rule, that no officer can claim protection, as such, while doing an act in violation of his duty, or inconsistent with it; certainly not, when he is dishonestly abusing his power.

It should have been left to the jury to decide, upon all the circumstances of the case, whether Stratton was in fact acting in good faith, in the service of a lawful precept, as an officer; or, under the cloak of such precept, was acting as Gray's agent to seize his slave.   And to assist the jury in deciding this point, the testimony, which was excluded, was pertinent and should have been admitted.

The laws of the United States point out the proper officers for this business.   The laws of Massachusetts have provided none.   Unless proof that Stratton was acting under color of official authority, only in order to enable him to carry a person out of the State by force, be admissible, then our State goes so far as to provide officers, armed with all the authority of law, to catch slaves; whereas, even if the whole matter were not. by the constitution and laws, in the hands of the federal government, a law of the Commonwealth, assigning such a duty to her officers, would be unconstitutional; because, in the absence ot any condition in the frame of the general government, or the enactments of Congress, to that effect, she must be guided by her own constitution

*Austin,* (Attorney General,) for the Commonwealth.   The indictment is for a riotous assault on an officer while in the execution of his office under a legal warrant; and it need not have

set out more.  4 Mass. 391, & note.  The needless matter, set forth in the indictment, may be regarded as surplusage, immaterial to the crime charged, and not requiring proof ; so that the objection of variance is unfounded.  But if it must be proved, because it is alleged, it is sufficient to prove it, in sub stance ; and so it was proved.  Literal and exact proof is not necessary.  The first warrant, charging Latimer with larceny in Boston, was right, although the original taking was in Virginia.  *Commonwealth* v. *Cullins*, 1 Mass. 116.  *Commonwealth* v. *Andrews*, 2 Mass. 14.  This warrant, however, was super· seded, and another was taken out on a charge of larceny in Virginia.  And if it were true, that Latimer was called upon to answer to two offences, yet there would be no variance, as the offence of larceny was shown to have been charged.  All that is charged need not be proved in order to prevent a variance.  Being a fugitive from justice is not an indictable crime ; and the allegation, that Latimer was such fugitive, was a *descriptio personæ*, and did not affect the crime of larceny for which he was arrested.

The 8th section of *c.* 142 of the Rev. Sts. does not interfere with the laws of the United States, and therefore does not fall within the decision in *Prigg* v. *Commonwealth of Pennsylvania*, 16 Pet. 539.  If the provisions of that section are unconstitutional, then the similar provisions of the New York statute are unconstitutional, and thieves may steal in Massachusetts, and carry their plunder to New York, with perfect impunity.

There is nothing in Rev. Sts. *c.* 142, which requires that the charge of an offence in another State shall be first made in that State, in order to authorize the issuing of a warrant for apprehending the offender here.  The charge may be first made here Surely it is within the competency of the legislature of every State to provide for the maintenance of peace, order and security within its territory, and to cause the apprehension of dangerous offenders who may flee into it from other States.

As Stratton had a lawful warrant from the police court, he was well authorized to act under it ; and his agency for Gray, whether lawful or unlawful, could not impair his authority as

constable.   Nor  was  the  evidence  of  Gray's  declarations  and
of  Stratton's  knowledge  of  them  admissible.   The  complaint
was  not  made  to  the  police  court  by  Gray.   And  if  it  had  been,
and  if  the  warrant  had  been  fraudulently  obtained,  and  if  Strat-
ton  had  reason  to  believe  it  to  have  been  so  obtained ;  yet  as
it  was  lawful  on  its  face,  he  was  bound  to  execute  it.   *Savacol*
v. *Boughton,* 5  Wend.  170.

But  suppose  the  warrant  to  have  been  unauthorized ;  this
does  not  excuse  a  riotous  attack  upon  the  officer  who  was  act-
ing  under  it.   Strangers  cannot  lawfully  interpose  by  violence,
even  in  such  a  case.   1  East  P. C.  325,  328.

SHAW, C. J.   This  case  comes  before  the  court  by  excep-
tions  alleged  by  the  three  defendants,  who  were  found  guilty  by
the  jury,  to  the  rulings  and  instructions  of  the  municipal  court.

It  appears  by  the  bill  of  exceptions,  that  on  the  trial  evidence
was  offered,  to  show  that  at  the  time  of  the  alleged  riot  and
attempt  to  rescue,  on  the  night  of  the  20th  of  October,  the  said
Jonas  Stratton  was  a  constable  of  Boston,  duly  appointed  and
qualified ,  that  he  had  in  his  custody  the  said  George  Latimer,
a  colored  man ;  that  on  the  19th  of  October,  a  complaint  had
been  made  in  the  police  court,  charging  the  said  Latimer  with
the  crime  of  larceny  in  Boston,  on  which  he  was  arrested ;  but
that  on  the  afternoon  of  the  20th,  the  said  complaint  had  been
dismissed,  and  all  proceedings  thereon  ended ;  that  in  the  fore-
noon  of  the  same  day,  another  complaint  had  been  made  in  the
police  court,  charging  the  said  Latimer  with  a  larceny  in  Nor-
folk,  Virginia,  and  being  a  fugitive  from  justice ;  upon  which  a
warrant  issued,  to  arrest  the  said  Latimer,  and  upon  which  the
said  Stratton  had  arrested  the  said  Latimer,  and  had  him  in  cus-
tody,  at  the  time  of  the  supposed  riot  and  attempt  to  rescue.

It  appears  by  the  bill  of  exceptions,  that  another  fact  was  giv-
en  in  evidence,  though  not  stated  in  the  indictment,  which  was
this ;  that  shortly  before  the  said  riot,  in  the  evening  of  said
20th  of  October,  a  writ  of  *habeas  corpus* was  issued  by  the  chief
justice  of  the  supreme  judicial  court,  the  court  itself  not  being
then  in  session,  returnable  before  himself  forthwith,  in  behalf  of
said  Latimer.   On  a  return  of  said  writ,  by  said  Stratton,  be-

fore the chief justice, the other judges being present, for other purposes, the case was heard by all the judges ; whereupon it was certified by the chief justice, acting in that respect, with the aid and advice of the other judges, as follows :  " It appearing that the said Latimer is in custody of Jonas Stratton, as the agent of James B. Gray of Norfolk, Virginia, claiming the services of the said Latimer as a fugitive from labor and service, and that at the time of the service of this writ," (of *habeas corpus*) " the said Gray was about proceeding to convey the said Latimer before the proper tribunal, to obtain a certificate, according to the law of the United States ; ordered that the said Latimer be remanded to the custody of said Stratton."

1. The first exception taken is, that there was a material variance between the complaint and warrant from the police court, as set out in the indictment, and the complaint and warrant offered in evidence in support of this averment.

The manner in which this complaint and warrant are described in the indictment is as follows ; — after referring to said Stratton as a constable, then in the discharge of the duties of his office — " being in the service of a legal precept to him directed, and then having one George Latimer, otherwise called Albert Mason, in his custody as a prisoner, to be examined, on a charge of larceny, by the police court of said city, according to a certain lawful precept to him directed and issued by said police court, under its seal, upon a complaint made and sworn to, according to law, the said police court having lawful jurisdiction in the premises."    The evidence, offered in support of this averment, was a warrant issued by the police court, in due form, under its seal, to answer to a complaint of E. G. Austin, Esq. for larceny by said Latimer in the State of Virginia, and being a fugitive from justice, in said city of Boston.

It is to be kept in mind, that this is not a question of jurisdiction.    That is the subject of a separate exception, to be considered afterwards.    But it is simply a question of variance between the indictment and the proof.    And the court are of opinion that there was no such variance.    The difference is between a description more or less particular.    The description

46 *

does not embrace all the particulars ; but as far as it goes, the warrant offered in evidence conforms to the description. It was described as a warrant, on a complaint for larceny, to be examined before the police court. The complaint was technically a complaint for larceny, though committed in another State ; and the prisoner was to be examined thereon in the police court, in pursuance of a provision of a statute of the Commonwealth ; though not as having violated a law of this State, but as a fugitive from justice, from another State.

The case was argued, as if we were bound to presume that the grand jury, by the indictment returned, intended to describe the first warrant issued on the 19th of October, on a complaint of larceny in Boston ; and as all proceedings on that complaint had terminated before the time mentioned in the indictment, the averment was not supported by the proof. But we do not perceive, on what ground we are to presume that the grand jury intended a warrant on which all proceedings had terminated, and so was *functus officio*, and not a warrant in force at the time. The only question is one of description ; whether this last conforms to the description, in the indictment, of a warrant from the police court, on a complaint for larceny. The ground of this decision is, that it was a complaint for larceny, though the larceny is stated as having been committed in another State.

2. The second exception relied on is, that the police court had no jurisdiction of a felony committed in another State ; and as no requisition for the delivery of the offender had been made by the executive of Virginia, conformably to the constitution of the United States and the act of congress of 1793, *c.* 51, there was no authority, under which a warrant could issue, for the arrest of Latimer. This depends upon the constitutionality and validity of the Rev. Sts. *c.* 142, §§ 7 – 11, in regard to fugitives from justice. The case in question was precisely within the provisions of those statutes, which authorized a complaint against any person found in this Commonwealth and charged with having committed a crime in another State ; and that before any requisition from the executive of such State. But it is contended that this statute is unconstitutional and void, because

the sole purpose thereof is to aid in carrying into effect a duty devolving upon the citizens of the State, by the constitution of the United States, under which congress have legislated by the act of 1793 ; and as the authority of the government of the United States is paramount and exclusive, all state laws, designed to promote the same object, are void. *Houston* v. *Moore*, 5 Wheat. 1. *Prigg* v. *Commonwealth of Pennsylvania*, 16 Pet. 539. The authority of the latter case was mainly relied on ; and there are passages in the opinion of the majority of the court, which would seem to warrant the proposition. It was intimated in that case, but not decided, that all state laws, on the subject of fugitives from justice, were void, because, by the constitution of the United States, jurisdiction over the whole subject is vested in the government of the United States, and the will of the government is as much to be discerned, in what they have omitted, as in what they have enacted ; and therefore that all state laws on the subject must be void.

But it is to be remembered in this case, that the only subject in judgment before the court was the validity of state laws, in regard to fugitive slaves ; and all that was said, in regard to state laws respecting fugitives from justice, was merely by way of analogy and illustration. And there may be some grounds of distinction between the two cases. The ground, on which the majority of the court decided, was, that the owner of a slave, in the State where slavery is recognized, has a specific remedy for the loss of his slave, by the recaption of the slave, without the intervention of any legal process ; and that it was the purpose of the provision of the constitution, to secure to the owner of a slave the same right of recaption in the other States, which he has by the municipal law of his own State. The only aid, therefore, which he has need of, from any law, either of the United States or of the State, is to enable him to obtain the custody of the slave. This was the ground, on which the decision of the majority of the court, in that case, was placed. But it is obvious, that the right of one State to claim the delivery up of fugitives from its justice, who have escaped into another, is of a very different kind. It is founded

it is true, upon an express provision of the constitution of the United States; but it can be carried into effect, only through the medium of laws, and by the intervention of officers and magistrates. Such is the distinction between the two cases, that it is not to be concluded, until the question arises, that principles, applicable to one of these cases, must necessarily apply, in all their extent, to the other.

Again; although a majority of the supreme court of the United States were of opinion, that all state laws, on the subject of fugitive slaves, as well those in aid of the rights intended to be secured by the constitution of the United States, as all those which might in any manner obstruct, defeat or hinder them, were wholly void; yet several of the judges were of opinion, that laws of a State would be void only so far as they should tend to defeat or impair the rights intended to be secured, or so far as they should be repugnant to the constitution and laws of the United States.

But even this majority of the court, in deciding that the power of legislation on this subject is exclusively vested in congress, take care to insert a qualification, showing that this principle applies only to those state laws, the exclusive *purpose* of which is, to impede, or assist, or otherwise control masters in reclaiming their slaves; that is, when the sole purpose is to regulate the practical assertion of this right. They are careful to declare it as their opinion, that States, under their general power to secure the peace, may cause fugitive slaves to be arrested and restrained, to remove them from their borders, for their own security; and although such regulations may indirectly aid the owners of slaves in recovering them, yet, that not being the object and purpose of the statute, it will not be void, if it do not interfere with or obstruct the owner in reclaiming his slave. With this view of the grounds, on which the case of *Prigg* v. *Commonwealth of Pennsylvania* was decided, the court are of opinion that it is not decisive of the present case.

The Rev. Sts. c. 142, § 7, provide for the course of proceeding, when a demand shall be made upon the executive of this Commonwealth, in any case authorized by the constitution

and laws of the United States. If the provisions in this section were in any respect repugnant to the law of the United States, it must be held void. The general rule in regard to conflicting laws of the United States and of the State, where the United States have jurisdiction, is, not that the act of the State may not, in some respects, have the force of law; but that so far as it conflicts with that of the United States, which, in the case supposed, is the supreme law of the land, the state law is inoperative and void. If the section in question were the only provision on the subject, as it purports to provide for a subject placed within the exclusive jurisdiction of the United States, it might be held, on the authority of *Prigg's case*, to be intended for the sole purpose of regulating such subject, and consequently void. But the succeeding sections go further, and provide, § 8, that whenever a person shall be found within this State, charged with any offence committed in another State, and liable, by the constitution and laws of the United States, to be delivered over, &c., upon complaint made, he may be arrested and brought before a magistrate. The following sections direct the manner of proceeding against him ; requiring him to give bail or be imprisoned, and providing for his discharge, and for the payment of expenses by the complainant.

It is competent for any State to make all such laws, as in the judgment of the legislature may be necessary to secure the peace, and promote good order, within its borders. The provisions in question are primarily intended, no doubt, to aid in the discharge of the important duty due to other States, of surrendering fugitives from justice, by taking precautionary measures to secure their persons. But we think it manifest, that this is not the sole object. The persons described are those who have recently committed known crimes in adjoining States, and fled into this. Being liable to be demanded and surrendered, as fugitives from justice, may be considered as *descriptio personarum ;* and it significantly describes a class of persons dangerous to the security and peace of our own community Their presence is likely to cause disturbances. A wise government, bound to maintain peace and good order within 'ts terri

tories, and authorized to exercise a salutary vigilance and re-
straint over all persons within its jurisdiction, may well provide
for arresting such persons, and subjecting them to a judicial
examination, and requiring them to give bail for their appear-
ance and good behavior, or be imprisoned, if they be found
to have committed capital offences in other States, until due
inquiry can be made, and all persons injured by them have an
opportunity to institute such proceedings, criminal or civil, as
justice may require. A government is not bound to wait till its
own laws are violated. Reasonable apprehension of danger is
sufficient to justify a preliminary interposition to prevent it. It
is analogous to the case of persons, who by their language or
conduct have shown themselves dangerous ; they may be se-
cured by bail, or by actual imprisonment, to prevent mischief.

With this view of the power of the State, and the purposes
of the law, the court are of opinion, that the provision of the
Rev. Sts. c. 142, § 8, authorizing any court or magistrate, on
complaint against any person found within this State, charged
with an offence committed in any other State, and liable by the
constitution and laws of the United States to be delivered over,
&c., to issue a warrant and cause such person to be held for ex-
amination, and imprisoned or bailed for a limited time, is a wise
law, and one which the legislature are competent to make and
enforce, independently of their constitutional obligation to sur
render such person to other States, for trial and punishment.
It is a provision obviously not repugnant to the constitution and
laws of the United States, nor tending to impair the rights, or
relax the duties, intended to be secured by them. To this ex
tent, therefore, the court are of opinion that this law is consti-
tutional and valid ; one that the legislature had authority to pass ;
and therefore that the warrant issued under it, and pursuant to
its provisions, by the police court, and under which Stratton
was acting at the time of the alleged riot, was valid, and that
the averment in the indictment, that the police court had juris-
diction in the premises, is well sustained by this proof. Wheth-
er in an indictment for riot, averring an attempt to rescue a
prisoner from the lawful custody of an officer, it is necessary to

state the warrant under which such officer was acting, and the jurisdiction of the court from which it issued, or whether it would be sufficient to state, in general terms, that he was an officer, having a prisoner in custody by lawful authority, we give no opinion.

3. The next exception is, that as it appeared that the said Stratton was acting as the agent of the person claiming the custody of the prisoner as a slave, he could not avail himself of the protection derived from the warrant from the police court. The true question seems to be, whether an officer forfeits the protection which he has under a lawful warrant from the state authority, because he holds at the same time an authority, by power of attorney, from one claiming the custody of the same individual, as a fugitive slave, and proceeding before the courts of the United States to obtain a certificate, pursuant to the constitution and laws of the United States. Such was the character of the authority which Stratton then held ; and it appears from the bill of exceptions, that the alleged riot and attempt to rescue the prisoner took place immediately after he was remanded to the custody of said Stratton, on the hearing of the *habeas corpus* and return. There was nothing in this order inconsistent with the warrant under which the officer claimed to hold the prisoner in custody. Any one ground for remanding the prisoner to the custody of the officer was sufficient to dispose of the writ of *habeas corpus*, without deciding on any other. We think, therefore, that the averment in the indictment, that the officer was in the exercise of a lawful authority, under a warrant from the police court, is sustained by the evidence, and is not controlled nor falsified by the proof that he claimed to act and hold the prisoner under another authority *in pais*.

4. The next exception is founded on the rejection of evidence. The defendants called a witness to prove declarations made by James B. Gray, that Latimer had never committed any larceny ; that he was arrested on that charge merely to get him into custody, so that he might more easily be carried home ; and to prove that said Stratton had knowledge of that fact. This evidence was not admitted.

It seems to us, that this evidence was rightly rejected. It is necessary, in order to judge of its relevancy, to consider by whom it is offered, and for what purpose. It is offered by persons charged with riotously and forcibly resisting an officer in the execution of a warrant issued by lawful authority. The objection assumes, that if the complaint on which the warrant issued is false and groundless, and the officer is informed of it, he may not execute it. It would be to transfer the jurisdiction of hearing and inquiring into the merits of the complaint, from the court to the constable serving its process ; and it would compel him, at his peril, to decide right. Stating this proposition is sufficient to refute it.

5. The last exception is, that the holding of this warrant, by Stratton, at the same time that he held a power of attorney from Gray, claiming the custody of the prisoner as a slave, was an abuse of the process of the court. This is substantially the same point already considered. The question is, in what way it is to be considered as an abuse. May not an officer have several good detainers at the same time ? And in that case, will one defeat or avoid another ? In this case, the only inquiry is as to the validity of the complaint and warrant from the police court ; because it is that complaint and warrant which were set out in the indictment, and therefore to be proved on the trial. Had it been charged in the indictment, that the said Stratton held said Latimer on a lawful authority, as the agent of said Gray, then it would have been material to inquire into the legality and validity of that authority. But as the indictment was framed, that became unnecessary. Suppose, however, that both had been set out and both proved ; would one defeat the other ? The instances of having several detainers, of different kinds, against the same person at the same time, are familiar. A person may be arrested by the same officer as a criminal, a debtor, a deserting seaman, and the like, and all at the same time. It would not be the less true, that the prisoner was in lawful custody, under any one good warrant designated, because the officer claimed to hold him under other warrants, whether valid or not.

The court are of opinion, that the decisions of the municipal court, and the instructions to the jury, were correct, and that the exceptions must be overruled, and the conviction held good.